if I may reserve three minutes for rebuttal. Yes, may it please the court Nancy Adams for Golden Eagle and peerless that I would start with the jurisdictional issues that the court asked us to address with respect to PG&E and there are two separate reasons. This court has jurisdiction over the state order. The first is under the Moses Cone Doctrine, which stands for the proposition that a stay order is appealable. If that order effectively places a plaintiff such as the insurers out of court. This court has routinely held and routinely exercised jurisdiction over state orders that are lengthy and definite or both whether PG&E Doe versus Fitzgerald Blue Cross and Blue Shield. Here the order is both indefinite and it's also lengthy. I mean, you know, this case is not a lot like Moses H. Cone where you had basically identical cases and the federal one was stopped the other would then go to judgment be raised to the cotton block the federal case. So it was dead and done. This case is going to go forward. I mean the what happens in the state court in the underlying suit is not going to moot the case of the Moses H. Cone sense, but our case law seems to have gone further and extended Moses Cone to even when it's not a dead lawsuit and it will go forward, but it's just an and such an indefinite delay that it's tantamount to being put out of court. And so I take it you're you're really relying more on our extension of Moses H. Cone than Moses H. Cone itself. Yeah, how it's been interpreted so broadly and you see that in PG&E you see that in Doe Fitz versus Fitzgerald Blue Cross and Blue Shield and I I think what what's particularly important here is the context and that is that when an insurer does the right thing and it makes the decision to defend instead of deny and here the insurers initially denied coverage and then upon reconsideration agreed to provide a defense. It did so with the understanding it would have an expeditious resolution of that coverage issue this lawsuit this declaratory judgment action has been pending for over two years that is not an expeditious resolution, but of a coverage issue the second ground which is the collateral order doctrine doesn't seem like it's really divorced from the merits given that very significant portion of your briefing quite logically relies on how easy the merits are as an argument for not deferring them that I mean you're saying Gordon is very much on point and therefore this should have been resolved. So it's not really divorced from the merits in the way that I would normally think of a collateral order is having to be so the way we would look at it is it is it is a separate issue from the merits because what we have is we have a district court that is presently refusing to adjudicate on the merits and that is an important issue separate from those merits what this state order is doing is effectively refusing to adjudicate a declaratory judgment action and more broadly and then more particularly the court is refusing to entertain a rule 12c motion on the applicability of the sexual abuse and molestation exclusion or the same exclusion more particularly miss Adams. I guess we leave litigants like you and kind of a I guess maybe an easier or more difficult position, but most of our cases take see a fork in the road and take it with respect to whether this is better viewed under Moses Cone or under a collateral order doctrine. There's some tension there. It's not clear under the requirements that anything could actually be both. But do you have a preference for one or the other in terms of how we would resolve it? I think from our view from the insurers view both are applicable with respect to Moses Cone. It is indefinite that it is being triggered by an occurrence that is external. That's PG and E and that is the resolution of the underlying case. There is no trial date discovery is ongoing. Presumably there will be appeals and although Contra Costa says at some point it will be over. I mean a PG and E it said this isn't a standard to fix the facts. What is the current status? Is there a discovery cut off or there was a an amended complaint that was filed motions to dismiss or Jameers were filed rulings on those were in April. There's a status conference. I want to say June 11th discovery is ongoing. There are depositions. My understanding is there's that are also a discovery cut off at this point is some date been set or is it I'm not aware of one. I know that discovery is ongoing. I guess the it seems like this shouldn't be an uncommon approach or at least attempted approach in coverage disputes where you have the underlying action and the defense and then the insurer wants a declaration of coverage one way or the other and then there might be a sense that you want to avoid the parallel litigation. I mean but but I don't see anything in the in the briefs on either side that points us to how we've usually dealt with this notwithstanding the volume of cases that involve either the appellate jurisdiction issue or the land estate question. What am I missing? It seems I get your point that you'd rather go ahead, but it seems like a perfectly sensible way to have parallel actions as in fact, you decided to do by trying to get a federal deck action on top of an underlying state action. Is this the I mean, where should we look to try to make sure that we're not doing something that will upset the general practice of insurers and insureds in these cases. So that's a great question on the general practice of insurers and insureds. So so the courts as I indicated before generally prefer that an insurer file a declaratory judgment action defend file a declaratory judgment action. What is happening is when the carriers are doing this motions to stay are being filed. They're lasting literally four years. And so when an insurer is making a decision about whether to provide a defense or not at some point the fact that these cases are being stayed is going to be a problem because they're lasting for years to allow the defense to play out in a way that could inform the coverage action. What's wrong with that? Because it's not necessary here. There's a fundamental error of law that was made by the district court. The district court stated that the application of the abuse or molestation exclusion call it a Sam exclusion on which plaintiffs rely depends on factual issues, whether the dough was in Chemex care custody and control and whether Kamek was negligent in the employment investigation supervision retention or failure to report the perpetrator that is not necessary. The duty to defend is determined by comparing the allegations in the complaint with the policy that is not a controversial or novel proposition. It is whether you want to call it the four corners rule the eight corners rule you compare the allegations with what is in the policy the Sam exclusion on its face is applicable to bar coverage for this claim. There is no need to resolve underlying facts and in Gordon. They didn't need the underlying facts the court the appellate court in California. So what would be what would follow if if in the underlying state court litigation it was to be determined that you know dough was not in Chemex care custody and control what would follow it would be our position that there's that there's still no coverage the policy bars coverage for claims make or for plaintiffs making allegations such as this the fact that Contra Costa may or may not be liable is irrelevant. So there's no obligation to defend someone who is wrongly being tagged with molestation of someone else. That's correct. And I'll give you an example courts across the country routinely hold a there is no coverage for a perpetrator of a sexual abuse claim for numerous reasons. It's not an accident when you sexually assault a minor. It is not unusual for the perpetrator to say I didn't do it. If that were the standard then we would be defending all of those cases and that's not accurate. It's based on the allegations and the same thing is true for the derivative party. So if they deny the connection that would give them secondary liability you think that that's just irrelevant to the coverage question. It's a liability question. It is not a coverage question. The coverage is determined by the plaintiffs allegations. And in fact in Gordon one of the arguments that the insured will actually it was the plaintiffs of Zassani. But what was being argued is that they're the insurance company didn't put forward affirmative evidence demonstrating that what the facts were and the court said no it's based on the allegations in the your position is that the in assessing the second Landis factor that the court essentially committed a legal error because it identified factual issues as being relevant that legally are not relevant. Not essentially did commit a legal error by not by not doing the traditional comparing the allegations of the complaint with the terms of the policy and instead finding that these liability issues somehow bore upon coverage. What do we do with I mean these are all questions of state law embedded into this federal standard. What do we do with what does the California Supreme Court mean when it says in Montrose that facts extrinsic to those eight corners can help determine coverage. So two things there. One is what is an extrinsic fact. So an extrinsic fact is something that bears upon coverage. An example I issue an auto policy it provides coverage. If you're driving a Jeep plaintiff alleges that they were involved in an accident. The insurer was driving a Camaro aside from the fact I don't know how you distinct don't can't tell what's a Jeep and what's a Camaro. The insurer finds out in fact it was a Jeep that is an extrinsic evidence that bears upon coverage and thus you would you would provide coverage. Another example is the great American case which is cited in the briefs there the court held at a catalog which demonstrated the potential for advertising is an extrinsic fact. Those are extrinsic facts that bear upon coverage whether or not you committed or didn't commit with the plaintiff is alleging is not and secondly in Montrose what the court was concerned about were issues of intent. It was important to make sure that where an insurer is taking the position that it insured did not negligently do something but instead they intentionally did something to try to trigger and it the expected or intended exclusion or to say it's not an occurrence effectively what the insurer is doing is jumping sides and joining joining forces with the plaintiff because now they're both arguing it's intentional conduct. That's what Montrose was concerned about. How isn't that happening in this case where the same coverage that the coverage determination overlaps the question of whether the insured was negligent or you know part of culpable in some way because that's not the issue that we're not we're not litigating whether it's true or not what we're asking the court to determine is that in the complaint the plaintiff alleges that she was within the care of custody and control of Contra Costa and because she was in because that's the allegation there is no coverage. We're not intending to do discovery on that. It is just basically looking again at the policy you look at the at the allegations in the complaint when you compare the two there is no coverage. You want to save your time for yes, please. All right. Thank you. Thank you counsel. We will hear now from Mr. Williams. Good morning. May it please the court John Williams on behalf of Apple Lee. Mr. Kamek and Contra Costa ballet who I'll refer to as CCB in my argument. I'll first address the jurisdiction question that was raised. I think we briefed this pretty thoroughly to the court, but it's our position that that the stay order is not appealable under Moses Cone. It does not put Golden Eagle out of court instead. It merely postpones the determination on the merits of the issue. We extended Moses H. Cone to postpone in cases. I mean that Moses H. Cone is not a postponement case. It's it's it's you're dead. It's never coming back case, but PG and E is not that case. It is a postponement case and we've said it applies. I would argue that in this case the relevant coverage issues have not been dismissed. They've merely been delayed in terms of trying to get we said in PG and E that if you're subject to an indefinite delay that stretches out for in that case at least 18 months and no prospect of the case coming back that that fits Moses H. Cone. Maybe that wasn't right as an original matter, but that's what we said and it sure seems like it fits this case. I'm not sure that I would agree with the characterization of indefinite delay here. There has been delay. I think the parties originally took a run at settlement and that caused some delay at this point. This this day is open-ended. There's no prospect this case the case in Contra Costa County Superior Court is going to go to trial in any foreseeable period within the immediate future a few comments on that. I don't know that this was president PG and E but there is a robust review process of the state order that the district court built in where the parties have to provide a status report every 90 days to let the district court know what the status is of the underlying case. Those status reports have been filed jointly by all parties. There has never been an issue. It's you do you agree with council's description of the current status that discovery is ongoing a discovery cutoff has not been set. No trial date has been set and there's a upcoming status conference in June. Is that all correct? I agree with that and I believe that in that does not seem awfully open-ended. We're already what at 16 months already. Well, I again, I think there's reasons for why it took as long as it did again. The parties tried to engage in mediation try to get the case globally settled that didn't occur then there were subsequent amendments made to the operative pleadings which were then challenged on demur. We had a demur ruling. So there was motions on those demurs but meanwhile, the the insurer is unable to proceed and why the status reports should change anything between having appellate jurisdiction now or three status reports in the future. I guess I'm just not sure where in our doctrine suggests that makes a difference. Once the delays there, I suppose it gives the opportunity for Golden Eagle to come back to the district court and raise these arguments and say to the district court. Hey, this is taking way too long. We'd like you to reconsider this day as far as I know and and Golden Eagle can tell you otherwise they've never done that. So there is a process for them to raise their hand and say this is taking too long. It's causing us prejudice and we need to get this back on calendar and that has not been done. Mr. Williams. Could you pick up on where I left off with your friend in terms of why anything that happens in the state court should matter to the eight corners question of coverage? Well, it's interesting that rule 12 motion that was brought here was both on the duty to defend and indemnify and I think that it's an easier question for the court. When you look at the issue of indemnification indemnification is going to require an adjudication of the underlying state court action to know what the findings are there and whether that is true. I mean the claim here is for molestation. The policy has a blanket exclusion for all liability arising out of molestation. It's negligence as to my client. It's a negative. There's a general negligence claim as to my client that claim survived Amur. There's a negligent supervision and hiring claim as well and and a civil rights claims. It's only negligent supervision to the extent that it's attached to molestation as the underlying claim, right? But with respect to the general negligence claim that is more broadly pled and that is a general negligence claim that has survived in this in this claim is it remains in the state court case as well. So so is it your position that Council on the other side that their position basically is wrong that we looked at the terms of the insurance and it has the Sam exclusion and we look at the complaint and the complaint is alleging, you know molestation and so therefore they are not going to be responsible even if you're found if the perpetrators found innocent. They say hey, we're not on the hook. So is that just a wrong reading? We would disagree with that and I think it's important that we look at that question in context because the way this was framed for the district court was on a stay motion and looking at the Landis factor. So that dealt with the second Landis factor and it's also important to note that under Landis. This is an issue of discretion. So we're here talking about possibly a bright line formulation what you do four corners eight corners how you do that and I think that it's important that the district court judge under Landis has the discretion to look at these factors and why wouldn't it be an abusive discretion if there's nothing you can tell us here that would move the needle from state court on these questions primarily of the duty to defend but also just coverage generally and indemnification. I mean don't you have to show in order for the Landis stay to work at all that there's some you know something that will happen in state court where they're both there's a requirement of coverage and there's a judgment that falls outside of this exception. Well again, we talked about extrinsic facts under Montrose and the fact that a an insurer cannot build a fortress of the pleadings of the third party and then hide behind it. It has to recognize these extrinsic facts. What's an extrinsic fact that takes it out of the coverage bar CCB has no record of Jane Doe ever being a student. That would just mean that there's no liability not that the exclusion that means they have been sued for negligence on a on an unmeritorious claim and they are seeking a defense for that claim. But but the suit for negligence as I understand it is is exactly what takes it out of coverage. Why is that not correct? Well, if it's an unmeritorious claim at that point and and these facts that are extrinsic that are known to the insured that would suggest that that exclusion doesn't apply and maybe I should back up a step. The presumption is that there's coverage under this policy. That is the presumption. It is the insurers duty to demonstrate that the exclusion applies. And so we have a presumption of coverage and then in order for the exclusion to apply there has to be facts and circumstances which demonstrate that that exclusion applies. And so if there is extrinsic evidence that demonstrates there is coverage until there is evidence that supports a determination that the exclusion applies there has to at very least be a defense. There has to be at very least a defense offered and so the insured just can't look at this as a formula. They have to also look at these facts that are extrinsic here and and in determining whether there was a stay and whether the state court action could inform that determination. The court properly looked at the Landis factors. I'm not here to tell you that another district court judge who would have considered the same factors may have come up with a different conclusion. That's the nature of the abuse of discretion standard in the state court litigation that she never actually went to the school and what she's hallucinating the whole thing is. I mean, it's not that it's just all made up. What what's your position in the underlying? It's a recovered memory case that was it was brought 20 years after the alleged acts occurred. There's evidence that the instructor in question was hired by the victim's parents to give instruction at the parents home and at the parents yoga studio and at the parents vacation home. So there is a lot of moving parts as to what as to the what you're contending that the the person had no connection whatsoever to the your studio not saying no connection at all. He was a substitute teacher there for a brief period of time, but with with respect to where the actual acts of molestation occurred was that instructor an agent of my client or was he an agent of the parents who had separately hired him to give private lessons to their daughter that goes to liability. I'm trying to figure out where it goes to the his coverage questions again. It's an extrinsic fact that the court could consider in the rubric of the Landis factors to determine whether the stay would impose a hardship on my client. I know but I'm still having trouble seeing how it would establish coverage to show that. She wasn't a student at the school and that the abuse took place at the home away from the school. How does that establish coverage? In this case because it's still a it's still a claim for a barred injury for which there's no coverage. I guess my response would be just by operation of the policy. There would be a presumption of coverage and lesson until there was a demonstration by the insured that the exclusion applied. So there there is a presumption that they have to provide coverage and the defense until the facts are established that demonstrate the exclusion applies. You have to play out hypothetically because this was the whole basis for the district courts ruling. We need to stay this case because the facts that get handed to us by the state court adjudication are likely to affect the coverage issue. I'm having a hard time seeing how that could possibly be true and I'm trying to understand from you. What are the facts we could be handed by the state court? Proceeding what is the outcome that would be handed to us that would establish the coverage exists and my position would be that these issues do overlap with the merits this question of whether this person was even a student or whether if you establish in the case that she wasn't a student and that he wasn't an employee. Does that mean you have then coverage? That would mean that the exclusion does not apply and if the exclusion does not apply the presumption is there would be coverage. Why would the exclusion not apply because as your friend on the other side just said the exclusion has to do with what's stated on the complaint not what is proven but what the allegation is and we disagree with that. We think under Montrose that's not the correct formulation Montrose is a is a case that speaks to the utility of a stay in similar circumstances and why the merits of the underlying case can overlap with the coverage question and why in that circumstance it's within the discretion of the court to to grant such a stay. Mr. Williams if we I guess one concern is if we have jurisdiction over this, I guess I can foresee and again, it's I'm unable to find this as a conventional practice in our district courts in these rather common coverage actions that that a land estate would occur. Although of course because of the appellate jurisdiction question and there may not be as many appeals, but I guess a concern is why would not every coverage action essentially then become going this become a pattern and if we have jurisdiction, it becomes a pattern that not only affects kind of the district courts in terms of imposing a stay on the proceeding but then comes to us to basically do a shadow determination of the exact coverage question that the district court has decided to stay. So I have two answers to your question. The first is we cited the court to both the Zurich American decision in the Golden Eagle decision both district court decisions where the circumstances were very similar to this. They're not binding on us. So not binding but but I think the question was how common is this practice and I wanted to address that that these are district court decisions where this has occurred. There are decisions where the determination else is elsewise and I don't think this court should be framing this question as trying to glean some bright line law because this issue is a question of discretion. Every case is going to be different. It is the district courts obligation in those circumstances to look at all of the facts and circumstances of the case to weigh the prejudice of the respective parties and come up with a determination, but your theory as adopted by the district court that the merits determination of the state court litigation even when the claim is framed in the same terms as the insurance exclusion. If that matters in this case, I don't see why it wouldn't matter in just about every coverage dispute that comes to our district courts. I'm not sure that's true. I think that again, it's going to depend on the facts and circumstances and a district court judge could view it differently. The question for this court is, is that within its discretion? And so I think that what Golden Eagle wants to do is extrapolate this into a conflict where you have to make a determination about a bright line law or bright line rule when in fact, this is the kind of discretion that district court judges exercise all the time and that this court typically defers to the facts and circumstances matter, but it in the first instance, it's up to the district court judge to evaluate those facts and circumstances. This court wasn't making any bright line rule by this determination. And so it's our position that that discretion should be upheld with by this court. Unless there's further questions. I think I'm sit back my time. Thank you counsel. Thank you. All right, we'll hear rebuttal. Thank you. First Golden Eagle did move for reconsideration and it was summarily denied by the district court and that's part of the appeal and that's in the record at 232. Secondly, with respect to the discretion standard in the context of a stay order this court is held young and PG and E that it's less deferential for a stay action. And of course if there is an error of law which the insurers contend there is you do have an abuse of discretion. So what's your response to his contention that if the result that we are handed from the state court litigation is that the plaintiff was not a student at the school and the alleged assailant was not an employee of the school when the events happened that they were then would be coverage. What's your response to that? That's wrong and I'll give you an example if imagine if you have a plaintiff who alleges that it ensured polluted a piece of property and assume that the policy has a pollution exclusion on it an absolute pollution exclusion under this theory you would have to defend that lawsuit if the insured denied that it polluted that land that is effectively what we're hearing is that if an insured is denying liability then there is an obligation to provide a defense but that's not what the policy provides the policy bars coverage for claims alleging sexual abuse. That's what we have the so the land is factors is an abuse of discretion, but their their factors and it's not clear that even if there's a legal error with respect to one of the factors on this coverage question that the other ones don't do enough work to affirm. So for example, what prejudice did you show or claim to the district court to you that would result from this day? We obviously have to defend and I understand how the courts have have held with respect to that defense obligation, but I think it's also important that this is a pattern where a carrier is agreeing to provide a defense and it now has to wait years to get an expeditious review. Did you make that argument to the district court? What we argue to the district court was that we were going to have to continue to defend that's right, which is as you said is already legally required and what about the the two front war question on the so there's this kind of balancing the equities the California courts have generally seem to disfavor these dual actions proceeding at the same time and why isn't that that enough on the prejudice just on the equities to affirm the stay so I would disagree with that what what the California courts have held is that when it's an issue of intent when an insurer is arguing that the insured's conduct is intentional that creates an issue and in fact Montrose has guideposts that talks about when the issue is about intent and where an insurer is arguing that it was intentional conduct and effectively jumping in bed with the plaintiff that is a problem that is not what we're talking about here. We're not talking about switching sides. We're not talking about overlapping facts, which is under your view no matter how the facts come out in the state court litigation. There's no coverage anyway. That's exactly so there can't be a situation like Montrose where you're with the insured is put in the top position of I've got to argue this for coverage, but this for defense. That's exactly right because we're not arguing intentional conduct. We're arguing the same exclusion bars coverage and and that Gordon supports that position. All right, we've taken you over. So, all right. Thank you counsel. The case just argued will be submitted.
judges: COLLINS, JOHNSTONE, ALBA